**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

WASEEM DAKER,

        Plaintiff,

    v.

PATRICK HEAD, et al.,

        Defendants.

CIVIL ACTION NO.: 6:14-cv-47

## O R D E R

Presently before the Court is "Plaintiff's Partial Objections to Magistrate Judge's December 20, 2019 Order and Report & Recommendation." (Doc. 110). After an independent and de novo review of the record, the Court **SUSTAINS in part** and **OVERRULES in part** Plaintiff's Objections to the Magistrate Judge's Report and Recommendation and **ADOPTS in part** and **REJECTS in part** the Magistrate Judge's Report and Recommendation, (doc. 99). The Court also **OVERRULES** Plaintiff's Objection to the Magistrate Judge's Order directing Plaintiff to clarify certain claims. In addition to severing, transferring, and dismissing certain of Plaintiff's claims, as laid out herein, this Court, by adopting portions of the Magistrate Judge's Report and Recommendation, also **DENIES** Plaintiff's preliminary injunctive relief Motions, as supplemented, (docs. 8, 10, 11, 72, 73). The Court also **GRANTS** Plaintiff's Motion to Withdraw his Motion for Preliminary Injunction or Motion for Temporary Restraining Order regarding forceable shaving, (docs. 146, 146-1), and **DENIES as moot** Plaintiff's Motion for Preliminary Injunction or Motion for Temporary Restraining Order regarding forceable shaving, (doc. 132).

## BACKGROUND

Plaintiff, who is presently incarcerated at Valdosta State Prison in Valdosta, Georgia, brings this action under 42 U.S.C. § 1983 against various state prison officials, as well as three county officials involved in his underlying criminal conviction. (Docs. 1, 9.) In his Complaint and Supplemental Complaint, he challenges an array of prison conditions while at Georgia Diagnostic & Classification Prison ("GDCP") and Georgia State Prison ("GSP") between 2012 and 2014. (Id.) After conducting the requisite frivolity review under 28 U.S.C. § 1915A, the Magistrate Judge recommended the Court sever and transfer certain claims and dismiss other claims and Defendants and ordered Plaintiff to provide clarification of several claims. The Magistrate Judge also recommended denying Plaintiff's preliminary injunctive relief Motions, as supplemented, (docs. 8, 10, 11, 72, 73). Plaintiff, however, was permitted to proceed with a number of claims arising out of his incarceration at GSP in 2014. (Doc. 99.)

**I.      Plaintiff's Objections to Magistrate Judge's Report and Recommendation**

Plaintiff has objected to many of the Magistrate Judge's recommendations, (doc. 110), and the Court now considers these Objections.

### A.      Plaintiff's Request to Supplement his Objections

Plaintiff styles his Objections as "Partial Objections" and requests the Court allow him the opportunity to supplement his Objections upon receiving access to all the authorities listed in the Magistrate Judge's Order and Report and Recommendation. (Doc. 110, pp. 1–2). Plaintiff's "Partial Objections" are comprehensive and supported by extensive citations to legal authority. Simultaneous with the filing of his Objections, Plaintiff filed a Motion for Access to Case Authorities. (Doc. 114.) The Court has denied Plaintiff's Motion for Access to Case Authorities, (doc. 232), and the Court now also **DENIES** Plaintiff's request to supplement his Objections to

the Order and Report and Recommendation upon access to the requested authorities.  Because Plaintiff's time for filing Objections has passed and his Objections are comprehensive and fully supported with citations to authority, the Court treats these Objections as Plaintiff's complete and final Objections.

**B.      Plaintiff's Objection to Severance and Transfer of Cobb County Claims and GDCP Claims**

In Plaintiff's Objections, he contends the Magistrate Judge erred in recommending the severing and transfer of the Cobb County claims and the GDCP claims.[1]  Specifically, Plaintiff contends these claims are not misjoined because they are all part of the same "series of transactions or occurrences" and, thus, can be brought together under Rule 20(a) of the Federal Rules of Civil Procedure.  (Doc. 110, pp. 2–4.)

Rule 20(a) provides:

Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a).  Contrary to Plaintiff's suggestion, his ability to join various claims against multiple defendants is not unlimited simply because Plaintiff espouses some sort of connection. Courts have recognized limits on a plaintiff's ability to join claims under Rule 20.  See Skillern v. Ga. Dep't of Corr. Comm'r, 379 F. App'x 859, 860 (11th Cir. 2010) ("The actions of the defendants named by [Plaintiff] appear to be separate incidents, ranging from feeding [him] inedible food to leaving him in isolation to not giving him proper medical care to improperly convicting him of a crime, occurring on different dates, and thus, while [Plaintiff] alleges that the

---

[1]  The Court hereby incorporates the description of the Cobb County claims and the GDCP claims as laid out in the Order and Magistrate Judge's Report and Recommendation.  (Doc. 99, pp. 6–9.)

actions of each defendant showed indifference to his failing health, there appears to be no other alleged connection between the people and events [Plaintiff] described."); Smith v. Owens, 625 F. App'x 924, 928 (11th Cir. 2015) (holding trial court did not abuse discretion when it dismissed case for failure to comply with Rule 20(a) where complaint alleged variety of unrelated claims against different corrections officers, arising out of different events and occurring on different dates); Wyatte v. Bryson, No. 5:15-cv-92, 2016 WL 917327, at *4 (S.D. Ga. Mar. 8, 2016) (holding claims against officials at different facilities regarding segregation policies failed to bear sufficient relationship to each other as to allow joinder), *adopted by* 2016 WL 3020918 (S.D. Ga. May 24, 2016); Smith v. Anderson, No. CV 311-044, 2011 WL 7098040, at *8 (S.D. Ga. Nov. 14, 2011) (not allowing joinder because "[a]lthough the two sets of claims share some similarities as to their legal bases, they involve different Defendants, different time-frames, and different prisons"), *adopted by* 2012 WL 243335 (S.D. Ga. Jan. 25, 2012); Coen v. Ga. Dep't of Corr., No. 5:16-CV-00353, 2018 WL 4365503, at *8 (M.D. Ga. Sept. 13, 2018) ("[T]he post-incarceration claims asserted against [one group of defendants] do not 'aris[e] out of the same transaction, occurrence, or series of transactions or occurrences' as the conditions of confinement claims against [other defendants].").

Here, Plaintiff seeks to join claims against the judge and county district attorneys involved in his 2012 criminal trial with claims against wardens and officials at the various prisons he resided in following his conviction.  This has resulted in a kitchen-sink style Complaint, where Plaintiff seemingly includes every grievance and incident occurring since his 2012 incarceration into one action.  While Plaintiff contends his placement in solitary confinement at various institutions is part of the same series of transactions or occurrences, the Court finds Plaintiff's interpretation of Rule 20(a) is overly broad.  See Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974)

("[T]he scope of the civil action is made a matter for the discretion of the district court."). Rather than streamline his litigation, Plaintiff's interpretation of Rule 20 would create a web of claims that would overwhelm the court system. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that a [multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees . . . ."). Furthermore, the Eleventh Circuit Court of Appeals, on review of this case, acknowledged Plaintiff impermissibly joined unrelated claims, stating: "[I]t appears that Daker asserted unrelated claims against unrelated defendants . . . ." Daker v. Head, 730 F. App'x 765, 768 (11th Cir. 2018). The Eleventh Circuit stated, "[T]he proper remedy is for the district court to dismiss those defendants or sever the plaintiff's claims against them." Id. (citing Fed. R. Civ. P. 21). As such, this Court **OVERRULES** Plaintiff's Objection to the severance and transfer of the Cobb County claims and the GDCP claims.

To the extent Plaintiff objects to the venue of the transferred claims, (doc. 110, pp. 4–6), he has failed to show venue in the Northern District of Georgia is improper for the Cobb County claims, and he has failed to show venue in the Middle District of Georgia is improper for the GDCP claims. As these claims are being severed from this action, their transfer to other Districts is appropriate. Nothing in Plaintiff's Objections suggests the Defendants in the transferred actions reside in the Southern District of Georgia or that a substantial part of the events or omissions giving rise to the transferred claims occurred in the Southern District. 28 U.S.C. § 1391(b). Accordingly, the Court **OVERRULES** Plaintiff's Objection to the Magistrate Judge's Recommendation on the venue of the severed claims.

### C.      Plaintiff's Objection Regarding Dismissal of GSP Claims Against GDC

Plaintiff argues it was error to recommend dismissal of all GSP claims against the Georgia Department of Corrections ("GDC") under the principle of Eleventh Amendment immunity. (Doc. 110, p. 7.)   In particular, Plaintiff alleges Defendant GDC is not entitled to Eleventh Amendment immunity on his Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims.

Plaintiff is correct that the GDC can be subject to injunctive relief under RLUIPA. However, because the Court is dismissing all of Plaintiff's RLUIPA claims, including his claims for injunctive relief, (see infra Section I(F)), any RLIUPA claims against GDC are no longer before this Court, regardless of Eleventh Amendment immunity.   Accordingly, Plaintiff's Objection to the dismissal of Defendant GDC is **OVERRULED**.[2]

### D.      Plaintiff's Objection Regarding MK-9 Claim

Plaintiff claims the "magistrate erred in failing to construe Plaintiff's MK-9 claim liberally."   (Doc. 110, p. 14.)   As there is no MK-9 claim contained in Plaintiff's Complaint or Supplemental Complaint and no recommendation by the Magistrate Judge regarding such a claim, the Court **OVERRULES** this Objection.

---

[2]  The Court notes that, despite the Magistrate Judge's recommendation to dismiss GDC on Eleventh Amendment immunity grounds and because GDC is not an entity subject to suit under Section 1983, (doc. 99, p. 21), Plaintiff continued to list GDC as a Defendant in his January 17, 2020 "Supplement," asserting GDC was liable for his Section 1983 claims regarding conditions of confinement at GSP, access to courts (photocopies) at GSP, and First Amendment religious exercise at GSP.   (Doc. 105.)   While the Court is withholding judgment on some of the Defendants listed in Plaintiff's "Supplement," the listing of GDC in the "Supplement" does not change the Court's analysis with respect to the dismissal of GDC.   It is well established that the immunity provisions of the Eleventh Amendment serve as a bar to Section 1983 actions against the GDC.   See Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars [a plaintiff's Section 1983] action against the Georgia Department of Corrections . . . ."). Accordingly, GDC is **DISMISSED** from this action.

**E.      Plaintiff's Objection to Dismissal of Substantive Due Process Claims**

Plaintiff objects to the Magistrate Judge's recommendation that the Court dismiss his substantive due process claims arising out of his placement on Tier II.  (Doc. 110, pp. 17–37.)  As support for his position, Plaintiff contends the doctrine of substantive due process protects his fundamental rights and includes those rights encompassed by the First Amendment, which he claims have been infringed as a result of being placed on Tier II.

This Court declines to expand the doctrine of substantive due process to include alleged violations of First Amendment rights on Tier II.  This ruling is in line with the United States Supreme Court's position on substantive due process.  In Albright v. Oliver, the Supreme Court noted its reluctance to "expand the concept of substantive due process," stating that the "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.  The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."  510 U.S. 266, 271–72 (1994) (citations and quotation marks omitted).

Moreover, as the Magistrate Judge noted in his Report, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  (Doc. 99, p. 29) (quoting Albright, 510 U.S. at 273 (citation omitted)).   In this case, the First Amendment, and not the doctrine of substantive due process, would be the appropriate framework for interpreting and ruling on claims related to the deprivation of First Amendment rights.  See Cty. of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (A general constitutional provision applies only if the matter presented is not "covered by" a more specific provision.); West v. Davis, 767 F.3d 1063, 1067 (11th Cir. 2014)

("[W]hen a specific provision of the Constitution is allegedly infringed, a court must decide the claim in accordance with the terms of that provision rather than under the more general rubric of substantive due process."). Plaintiff raised a number of First Amendment claims in his Complaint, and the Court has considered those claims. However, to the extent Plaintiff seeks to add First Amendment claims to this case under the guise of substantive due process, the Court will not allow it.

Plaintiff also spends significant time in his Objections analyzing his substantive due process claim under the framework presented in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). <u>Sandin</u> deals with a prisoner's procedural due process rights, as opposed to his substantive due process rights, and therefore, is not applicable to Plaintiff's substantive due process claims.[3] For these reasons, the Court **OVERRULES** Plaintiff's Objections to the dismissal of his substantive due process claims.

### F.   Plaintiff's Objection to Dismissal of his RLUIPA Claims

Plaintiff objects to the Magistrate Judge's recommendation that his RLUIPA claims be dismissed. In particular, Plaintiff seeks to move forward with his claims for injunctive relief under the RLUIPA, arguing his transfer out of Georgia State Prison did not moot these claims. (Doc. 110, pp. 37–41.) Plaintiff's RLUIPA claims are as follows: "All Defendants at GCD, GDCP, and G.S.P. have denied Plaintiff Jumu'ah [and Ta'lim] Islamic Service every week since he entered GDC custody from 10/3/12 to date, and are continuing to deny him such service." (Doc. 1, p. 21.) As discussed above, the Court is severing and transferring Plaintiff's GDCP claims, so all that remains are the RLUIPA claims regarding the denial of Islamic services at GSP.

---

[3]  Although recommending dismissal of Plaintiff's substantive due process claims, the Magistrate Judge concluded, "Plaintiff arguably sets forth a procedural due process claim against Defendants Deloach, Owens, Toole, Bailey-Dean, and Jacobs."  (Doc. 99, p. 31.)

To the extent Plaintiff seeks injunctive relief, the Magistrate Judge correctly determined his transfer to another facility moots his claims. "The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984); see also Robbins v. Robertson, 782 F. App'x 794, 800 (11th Cir. 2019) (noting "an injunction directing his former prison officials to provide Plaintiff with a particular diet would provide Plaintiff with no relief").

In his Objections, Plaintiff alleges the denial of religious services is repeated at other prisons throughout the state and will continue to impact him during his incarceration; however, the Court notes these allegations are not contained in the Complaint. While Plaintiff brought his RLUIPA claims against GDC and the GSP Defendants, he makes no allegations in his Complaint that the events occurring at GSP are a result of a policy implemented systemwide. Moreover, even if the Court were to construe such a claim, it still declines to consider Plaintiff's request for injunctive relief. Plaintiff has ongoing litigation in the Middle District of Georgia, where he is currently incarcerated, against the GDC, GDC Commissioner Ward, and others on the very issue of his access to Jumu'ah and Ta'lim services. Suppl. Compl. & Recast Compl., Daker v. Dozier, 5:19-cv-126 (M.D. Ga. Apr. 8 & Sept. 27, 2019), ECF No. 1-1, pp. 46–47, ECF No. 12, pp. 50– 51, 67–68. Thus, there is no reason for this Court to hear this matter, as it would be duplicative of Plaintiff's efforts in the Middle District. See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . the general principle is to avoid duplicative litigation.); I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1551– 52 (11th Cir. 1986) ("Trial courts are afforded broad discretion in determining whether to stay or dismiss litigation in order to avoid duplicating a proceeding already pending in another federal court.").

The Court concludes the Middle District would be better positioned to issue any injunctive relief regarding practices at Plaintiff's current facility, rather than this Court, which only has before it Plaintiff's claims while he was housed at GSP in 2014.  This outcome is similar to Hardwick v. Brinson, 523 F.2d 798, 800 (5th Cir. 1975), where the court stated, "[Plaintiff] is entitled to have his claim considered but by only one of the courts he had selected" and concluded the claim should be considered in the district where he was presently incarcerated.  For these reasons, the Court **OVERRULES** Plaintiff's Objections regarding the dismissal of his RLUIPA claims.[4]

### G.   Plaintiff's Objection to Dismissal of Retaliation Claims

Plaintiff also objects to the Magistrate Judge's recommendation that this Court dismiss his retaliation claims.  (Doc. 110, pp. 42–45.)  In Plaintiff's Statement of Claims for his Complaint, he stated, "GDC Defendants' placement of Plaintiff on solitary confinement in retaliation for his previous litigation against the GDC during his incarceration violates the First and Fourteenth Amendment."  (Doc. 1, p. 40.)

As to Defendants Toole, Shuemake, Todman, and Davis, there is nothing to indicate Plaintiff even alleged a specific retaliation claim against them in the Complaint or Supplemental Complaint.  Moreover, Plaintiff does not mention these Defendants in his Objections to the Magistrate Judge's Report regarding his retaliation claims.  (Doc. 110, pp. 42–45.)  Accordingly, the Magistrate Judge was correct in concluding a retaliation claim against Defendants Toole, Shuemake, Todman, and Davis would fail.  See Williams v. Brown, 347 F. App'x 429, 435 (11th Cir. 2009) (affirming dismissal of two defendants where plaintiff simply alleged "[defendants]

---

[4]  Plaintiff's claim that Defendants violated a Northern District of Georgia injunction regarding access to religious services is without merit.  (See Doc. 1, p. 21.)  In Daker v. Commissioner, Department of Corrections, the Eleventh Circuit held, "Although the [Northern District of Georgia] previously granted Daker an injunction requiring the prison to provide him with Ta'lim services, that injunction ended in 2005 when he was released from prison on his earlier sentence."  No. 15-11266-F at *3 (11th Cir. Oct. 17, 2016).  The Eleventh Circuit noted that later developed facts could not be used to revive the expired injunction.  Id.

subjected [him] to a retaliatory negative transfer" without alleging facts associating defendants with the allegedly retaliatory transfer).

As to any retaliation claim against Defendant Jacobs, Plaintiff fails to sufficiently allege a causal connection between his 2007 litigation and Defendant Jacobs' act of placing Plaintiff on Tier II at GSP in 2014.  See Smith v. Villapando, 286 F. App'x 682, 685 (11th Cir. 2008) ("To establish a retaliation claim under the First Amendment, a prisoner must show a causal connection between his protected speech and the harm of which he complains.").  Plaintiff's attempt to refer to statements made by Defendant Humphrey in October 2012, (doc. 110, p. 43), and to testimony by Defendant Chatman in March 2014, (id. at pp. 44–45), while Plaintiff was still incarcerated at GDCP, has no bearing on retaliation claims arising out of actions that occurred at GSP. Additionally, Defendant Chatman's March 2014 deposition testimony, which Plaintiff cites in his Objections, gives no indication of a retaliatory motive for Plaintiff's housing placement.  (Id.)

As to Plaintiff's housing placement at GSP, Plaintiff alleges Defendant Jacobs told him he was placed on Tier II at GSP due to his prior housing placement at GDCP and not because of Defendants' retaliatory motives.  (Doc. 9, p. 17.)  Defendant Jacobs' acknowledgement that he remembered Plaintiff's prior federal litigation does not suggest the 2007 litigation was the reason for Plaintiff's 2014 housing placement.  Plaintiff's conclusory allegation that certain conduct was retaliatory, without more, is insufficient to state a valid claim.  See Leonard v. Monroe County, 789 F. App'x 848, 850–51 (11th Cir. 2019) (dismissal under Section 1915 affirmed where prisoner "made only a conclusory assertion that he was placed in administrative confinement in retaliation for filing grievances").  Moreover, as the Magistrate Judge noted, temporal remoteness between the protected act and the alleged retaliatory behavior can defeat a retaliation claim.  See Taylor v. Nix, 240 F. App'x 830, 836 (11th Cir. 2007) ("[G]iven the temporal remoteness of the preparation

of the litigation documents and the . . . parole hearing, we conclude that these documents do not have any probative value of retaliation.").  Here, approximately seven years passed between Plaintiff's federal litigation and the alleged retaliation at GSP.  Thus, the Court determines Plaintiff cannot establish a causal connection between the 2007 litigation and Plaintiff's placement on Tier II in 2014.  The Court, therefore, **OVERRULES** Plaintiff's Objections regarding the dismissal of his retaliation claims.

### H.    Plaintiff's Deprivation of Property Claims

Plaintiff objects to the Magistrate Judge's recommendation that the Court dismiss his deprivation of property claims.  (Doc. 110, pp. 46–54.)  In his Report, the Magistrate Judge determined Plaintiff's due process property deprivation claim would fail because Georgia provides a meaningful postdeprivation remedy in the form of a conversion action under O.C.G.A. § 51-10-1.  (Doc. 99, p. 38.)  In his Objections, Plaintiff contends the existence of a postdeprivation remedy does not satisfy due process in this case, claiming the seizure of his property on July 16, 2014, by Defendants Shuemake, Todman, and Davis, and Officer Osborne (not a named Defendant) was not random and unauthorized, but rather, was performed pursuant to orders from Defendant Toole, the GSP Warden, and Defendant Jacobs, the GDC Facilities Director, and thus, qualifies as an established state procedure.  (Doc. 110, p. 47.)  As support for his position, Plaintiff cites Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), which states, "[P]ost-deprivation remedies do not satisfy the due process requirement where the deprivation of property is effected pursuant to established state procedure, rather than through random, unauthorized action."

In Wright, correctional officer defendants searched a plaintiff's cell pursuant to the orders of a superior, and in the process, destroyed photographs and legal papers and also confiscated a law book and legal pleadings.  Wright, 795 F.2d at 965.  After the district court dismissed the

plaintiff's deprivation of property claim, finding he had access to adequate state remedies, the Eleventh Circuit reversed, holding plaintiff's allegations "sufficiently charged that the taking was the result of established state procedure" and did not "involve a situation in which predeprivation process would not have been feasible." Id. at 966–67.  The Wright court concluded "the district court erred in holding that [plaintiff] must resort to state post-deprivation remedies." Id. at 967.

Here, Plaintiff similarly alleges his property was confiscated by Defendants Shuemake, Todman, and Davis and Officer Osborne pursuant to the orders of their superiors, Defendants Jacobs and Toole.  At this point, Plaintiff has sufficiently pleaded facts alleging the taking was performed pursuant to an established state procedure, and, therefore, the claim shall proceed. Accordingly, the Court **SUSTAINS** Plaintiff's Objection to the dismissal of his deprivation of property claim based on the events of July 16, 2014, and **REJECTS** the Magistrate Judge's recommendation that such claim be dismissed at this juncture.  Plaintiff may proceed with his deprivation of property claims against Defendants Toole, Jacobs, Shuemake, Todman, and Davis arising from the July 16, 2014 seizure of his property at GSP.

Plaintiff also raises an objection concerning the merits of his claim that GDC Defendants unlawfully seized $50 from his prison account on October 16, 2012.  (Doc. 9, p. 27.)  This claim arose over a year before Plaintiff's transfer to GSP and, therefore, does not logically relate to the GSP claims that remain in this case.  See Constr. Aggregates, Ltd. v. Forest Commodities Corp., 147 F.3d 1334, 1337 n.6 (11th Cir. 1998) ("[A] claim arises out of the same transaction or occurrence if there is a 'logical relationship' between the claims.").  The Magistrate Judge, rather than review the merits of this claim, properly identified it as a "GDCP claim" and recommended it be severed and transferred to the Middle District of Georgia.  (Doc. 99, pp. 6, 8–9, 20.)

Accordingly, Plaintiff's Objection regarding the merits of his deprivation of property claim while at GDCP is not properly before this Court and is **OVERRRULED**.

## I.      Plaintiff's Objections to Dismissal of Grievance Procedure Claims

Plaintiff also objects to the Magistrate Judge's recommendation that the Court dismiss his claims arising from the prison's grievance procedures.   He argues the Magistrate Judge misconstrued his claim as a due process claim, and he intended for it to state an access to courts claim.  (Doc. 110, p. 54.)  Even if the Court were to construe Plaintiff's claim as one of access to the courts, it would still not survive this Court's review under 28 U.S.C. § 1915A.  As support for his access to courts claim, Plaintiff alleges the GDC grievance procedure "is designed to prevent prisoners from being able to develop evidence or an administrative record that will support court claims challenging prisoners' conditions of confinement."  (Id.)  This argument is without merit.  Non-prisoners frequently file claims without the benefit of an administrative record.  Further, there is no allegation of destruction of evidence or concealment of facts by Defendants.  Rather, Plaintiff, in his Complaint, alleges Defendants impeded his ability to file grievances.  (Doc. 1, pp. 23–24.)  As Plaintiff's allegations in his Complaint involve denial of his access to the grievance procedure, the Magistrate Judge correctly found Plaintiff failed to state a claim, citing Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011), which held an inmate has no constitutionally protected liberty interest in access to a prison's grievance procedure.  (Doc. 99, pp. 39–40.)

Furthermore, courts have denied attempts by plaintiffs to bring access to courts claims based on the unavailability of the prison grievance procedure.  See Fogle v. Gonzales, 570 F. App'x 795, 796–97 (10th Cir. 2014) (affirming dismissal of access to court claim because denial of grievance form did not prevent plaintiff from bringing suit in court).  In such cases, the proper way to address denial of access to the grievance procedure is to argue the administrative remedies

were unavailable if and when the issue of exhaustion under 42 U.S.C. § 1997e(a) arises.  See Ross v. Blake, 136 S. Ct. 1850, 1859–60 (2016) (outlining situations where administrative remedies are unavailable under 42 U.S.C. § 1997e(a)).  For these reasons, the Court **OVERRULES** Plaintiff's Objection to the Magistrate Judge's recommendation regarding the dismissal of Plaintiff's claims arising from the prison grievance procedures while he was at GSP.

**J.     Plaintiff's Objection to Dismissal of Defendant Fountain**

Plaintiff seeks to keep Defendant Fountain in the current lawsuit, alleging that, as a result of her role in the GDC Central Office Management Team, she should be kept as a Defendant for all claims arising from GDC policies and customs.  (Doc. 110, p. 8.)  He also alleges he talked to Defendant Fountain on July 16, 2014, about his placement on Tier II.

To sustain a Section 1983 action, Plaintiff must allege more than simply that a Defendant was involved in some group that adopts and maintains policies.  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (rejecting discrimination claim against policy makers because plaintiff failed to allege detention policies were adopted not for a neutral, investigative reason, but for purpose of discriminating on account of race, religion, or national origin).  Here, Plaintiff's vague assertion that Defendant Fountain was involved in a group that adopted and maintained GDC policies is not sufficient to sustain a claim against her for the alleged due process violations raised in Plaintiff's Complaint and Supplemental Complaint.  Nor does his onetime conversation with Defendant Fountain regarding his placement on Tier II suffice to allege a claim against her.  Plaintiff acknowledges Defendant Fountain told him she would "speak with Warden Toole about it."  (Doc. 9, p. 16.)  There is no indication that she was responsible for or participated in the shakedown, the taking of his property, or the placement of Plaintiff on Tier II.

Plaintiff also objects to the dismissal of Defendant Fountain, alleging her denial of his grievance concerning the prison's use of unsanitized clippers "suggests deliberate indifference because it shows that Plaintiff complained about that custom to Defendant, and she failed to take action to correct it."  (Doc. 110, p. 9.)  Plaintiff's allegation that Defendant Fountain denied a grievance is not sufficient to sustain a claim against her.  Gresham v. Lewis, No. 6:15-cv-86, 2016 WL 164317, at *3 (S.D. Ga. Jan. 13, 2016) ("An allegation that prison officials denied grievances does not 'support a finding of constitutional violations on the part of' those defendants."), *adopted by* 2016 WL 632588 (S.D. Ga. Feb. 17, 2016).  Nothing in the Complaint discusses the actual reasons for or the substance of Defendant Fountain's denial, and the Court will not construe the mere fact of denial of a grievance as sufficient to plead a claim of deliberate indifference.  Id.

The Court, however, notes that the Magistrate Judge directed Plaintiff to clarify the following Section 1983 claims: (1) conditions of confinement at GSP, (2) access to courts (photocopies) at GSP, and (3) First Amendment religious exercise at GSP, (doc. 99, pp. 3, 26, 28–29, 34).  Plaintiff has identified Defendant Fountain in his January 17, 2020 "Supplement" as a Defendant for these claims.  (Doc. 105.)  This Court, therefore, **OVERRULES in part** and **SUSTAINS in part** Plaintiff's Objection regarding the dismissal of Defendant Fountain.  The Court dismisses all claims against Defendant Fountain, with the exception of the three Section 1983 claims that are still under consideration by the Court: (1) conditions of confinement at GSP; (2) access to courts (photocopies) at GSP; and (3) First Amendment religious exercise at GSP.[5]

---

[5]  Because Plaintiff submitted his "Supplement" regarding these three claims, the Magistrate Judge shall conduct the required frivolity review of these claims before the claims proceed.

**K.    Plaintiff's Objection to Dismissal of Defendants Major Smith, Rozier, James Smith, and Fowler**

Plaintiff objects to the dismissal of Defendants Major Smith, Rozier, James Smith, and Fowler, alleging they all had a role in adopting and maintaining GDC policies and customs, and thus, should be kept as Defendants for all claims arising from GDC policies and customs. (Doc. 110, pp. 9–11.)   For the same reasons this Court rejects this argument as to Defendant Fountain, it rejects it here as to any claims at issue in this Order.   These Defendants' roles in management and policy-making, without more, are insufficient to form the bases for Plaintiff's constitutional claims against them.   Ashcroft, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

However, as noted above, the Magistrate Judge still has under consideration Plaintiff's following Section 1983 claims: (1) conditions of confinement at GSP; (2) access to courts (photocopies) at GSP; and (3) First Amendment religious exercise at GSP.   (Doc. 99, p. 3.) Defendants Major Smith, Rozier, James Smith, and Fowler were all identified in Plaintiff's January 17, 2020 "Supplement" regarding these three claims.   This Court, therefore, **OVERRULES in part** and **SUSTAINS in part** Plaintiff's Objection to the dismissal of these Defendants, dismissing all claims against Defendants Major Smith, Rozier, James Smith, and Fowler, with the exception of the three Section 1983 claims that are still under consideration: (1) conditions of confinement at GSP, (2) access to courts (photocopies) at GSP, and (3) First Amendment religious exercise at GSP.   (Doc. 99 , p. 3.)

**L.    Plaintiff's Objection to Dismissal of Defendant Broome**

Plaintiff objects to the recommendation that the Court dismiss Defendant Broome.   In his Report, the Magistrate Judge found Plaintiff failed to state a claim for relief against Defendant

17

Broome, noting, "Plaintiff does not make any material factual allegation connected to his GSP Claims against Defendant[] . . . Broome."  (Doc. 99, p. 22.)  Plaintiff, however, now alleges Defendant Broome, as GSP Medical Director, is the final policy-maker and custom-maker pertaining to medical care at GSP and should, therefore, remain as a Defendant for all claims arising from GSP policies and customs relating to the denial of medical care at GSP.  (Doc. 110, p. 11.)  As noted above, Defendant Broome's role in management and policy-making, without more, is insufficient to form the basis for Plaintiff's constitutional claims against him.  Ashcroft, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Plaintiff also alleges in his Objections for the first time that Defendant Broome was responsible for canceling the medical profiles of all prisoners on Tier II at GSP.  (Doc. 110, p. 11).  However, the filing of Objections is not a proper vehicle through which to make new allegations or present additional evidence.  Frank v. United States, 789 F. App'x 177, 179 (11th Cir. 2019) ("[D]istrict court has discretion to refuse to consider matters raised for the first time in an objection to a magistrate judge's report and recommendation."); Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009) (holding district court has discretion to decline to consider party's argument when that argument was not first presented to magistrate judge).  As Plaintiff's Complaint and Supplemental Complaint fail to state a claim against Defendant Broome, the Court **OVERRULES** Plaintiff's Objection to the dismissal of Defendant Broome.

**M.     Plaintiff's Objection to Dismissal of Defendant Mr. John Doe (Roy Sabine)**

Plaintiff also objects to the dismissal of Defendant Mr. John Doe, whom he seeks to substitute with Roy Sabine.[6]  (Doc. 110, p. 12.)  Plaintiff alleges Defendant Sabine, the Health Services Administrator, is the final policy-maker and custom-maker for policies and customs pertaining to medical care at GSP.  (Id.)  As noted above, Defendant Sabine's role in management and policy-making, without more, is insufficient to form the basis for Plaintiff's constitutional claims against him.  Ashcroft, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Accordingly, the Court **OVERRULES** Plaintiff's Objection regarding the dismissal of Defendant Sabine, previously identified as Mr. John Doe.

**N.     Plaintiff's Objection to Dismissal of Dr. John/Jane Doe (Dr. Ray and Dr. Geiger)**

Plaintiff also objects to the dismissal of Defendant Dr. John/Jane Doe (dentist), whom he seeks to substitute with Dr. Ray and Dr. Geiger.[7]  (Doc. 110, p. 13.)  This Court permitted Plaintiff to proceed on his claims of deliberate indifference against Defendant Murphy with respect to his dental issues.  (Doc. 99, p. 24.)  However, Plaintiff failed to make any mention of Dr. John/Jane Doe, now identified as Dr. Ray and Dr. Geiger, in his claim of deliberate indifference to serious dental needs.  (Doc. 1, p. 20.)

As there is no allegation in the Complaint that either Dr. Ray or Dr. Geiger was involved in the denial of Plaintiff's dental care or the failure to provide Plaintiff with a toothbrush, it appears

---

[6]  The Court **DIRECTS** the Clerk of Court to amend the docket and record of this case to reflect the proper naming or identification of the following Defendant: Roy Sabine should be substituted in place of Mr. John Doe.

[7]  The Court **DIRECTS** the Clerk of Court to amend the docket and record of this case to reflect the proper naming or identification of the following Defendants: Dr. Ray and Dr. Geiger should be substituted in place of Dr. John/Jane Doe (dentist).

Plaintiff seeks to sue these Defendants based solely on their positions as dentists at the prison and not based on any actual interaction with these healthcare providers prior to the time he filed the Complaint and Supplemental Complaint.  This is not a sufficient basis for bringing a deliberate indifference claim.  In order "to state a claim for deliberate indifference under § 1983, there must be a causal connection between the constitutional violation and the state actor's conduct.  Such a causal connection may be established by showing that the state actor was personally involved in the acts that resulted in the violation of the constitutional right."  Martinez v. Burns, 459 F. App'x 849, 851 (11th Cir. 2012) (citation omitted) (nurses not liable because they did not treat plaintiff on dates alleged).

Plaintiff, in his Objections, now claims Dr. Ray and Dr. Geiger were "deliberately indifferent to his serious dental needs by denying, or unreasonably delaying, providing Plaintiff dental care at GSP for his toothaches and dental pains," (doc. 110, p. 13), but still fails to provide any explanation as to what these individuals did or did not do.  These conclusory allegations fail to meet the federal pleading standard necessary to plausibly state a claim.  As Plaintiff has failed to make any specific allegations connecting these two Defendants to his dental needs claim, the Court **OVERRULES** Plaintiff's Objection to the Magistrate Judge's recommendation to dismiss Defendant Dr. John/Jane Doe (dentist), now substituted with Dr. Ray and Dr. Geiger.

### O. Plaintiff's Objection to Magistrate Judge's Recommendation to Dismiss Certain Claims Without Opportunity to Amend

Plaintiff also contends the Magistrate Judge should have given him the opportunity to amend his claims prior to recommending dismissal.  (Doc. 110, p. 14.)  As support, he cites to Brown v. Johnson, 387 F.3d 1344 (11th Cir. 2004); however, Brown deals with a district court's denial of a motion to amend before any responsive pleadings had been filed and before the magistrate judge filed his report and recommendation.  In this case, Plaintiff received sufficient

notice in the Magistrate Judge's Report and Recommendation that certain of his claims failed to state a claim and might be subject to dismissal.  See Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that report and recommendation served as notice that claims would be sua sponte dismissed).

Moreover, Plaintiff was free to seek amendment of these claims under the Federal Rules of Civil Procedure if he so chose.  (Plaintiff's citation to Brown in his Objections, prior to the actual dismissal of any claims, defeats any argument that he was unaware of his ability to seek amendment.)  In fact, Plaintiff did file various motions to amend and supplement his complaint months after he filed his Objections.  (Docs. 174, 174-1, 212, 219.)  However, as explained by separate Order, (doc. 234), the proposed amendments and supplements completely failed to clarify the claims in this lawsuit.  In his proposed amendments and supplements, Plaintiff named over 160 Defendants and included events occurring years after the relevant timeframe for this lawsuit, and the proposed Amended Complaint totals 236 pages.  (Docs. 174, 174-1, 212, 219.)  Accordingly, even if Plaintiff's attempted amendment and supplements provided any clarification on the specific claims at issue here, taken as a whole, the documents flouted the Federal Rules of Civil Procedure, and thus, failed to remedy any failures in the Original and Supplemental Complaint.  In short, it is not this Court's responsibility to sieve through such a behemoth of a pleading in an effort to salvage any claims that did not pass muster in the original Complaint.  The proposed amendments and supplements were clearly an attempt to add new claims to this lawsuit and not an attempt to amend and clarify the existing claims.  Plaintiff may still seek leave to amend his Complaint or leave to file a supplement, but such amendment or supplement must satisfy the Federal Rules of Civil Procedure.

In light of the above, the Court **OVERRULES** Plaintiff's Objection regarding his opportunity to amend.

**II.     Plaintiff's Objection to the Magistrate Judge's Order**

Plaintiff also objects to the Magistrate Judge's Order directing Plaintiff to clarify certain claims, (doc. 99, p. 4), and this Objection requires a different analysis.  A district judge must consider a party's objections to a magistrate judge's order on a pretrial matter.  See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  However, the district judge may modify or set aside that order, and reconsider the pretrial matter, only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); see also Fed. R. Civ. P. 72(a).

Plaintiff alleges the Magistrate Judge, in directing Plaintiff to clarify some of his claims, issued "conflicting and confusing" instructions.  (Doc. 110, pp. 14–15.)  Specifically, he contends he was confused as to whether he was allowed to identify any of the Defendants that the Magistrate Judge recommended for dismissal as being part of the claims that the Magistrate Judge ordered Plaintiff to clarify.  The Court does not find these instructions confusing.  Plaintiff was simply directed to identify individuals against whom he intended to assert a claim.  Moreover, a review of the "Supplement" Plaintiff filed in an attempt to clarify his claims indicates Plaintiff erred on the side of identifying many of the Defendants recommended for dismissal, (see doc. 105 (identifying Defendants Georgia Department of Corrections, Fountain, Major Smith, Rozier, James Smith, and Fowler)).  Accordingly, any confusion caused by the Magistrate Judge's directive was harmless.

Plaintiff also claims the instructions in the Magistrate Judge's Order regarding amended complaints are confusing.  (Id. at p. 15.)  The Magistrate Judge, in directing Plaintiff to clarify

certain claims, stated in his Order: "To be clear, the Court is not asking Plaintiff to provide an amended complaint, only a supplement to his previously filed pleadings, and Plaintiff may not attempt to interject new and unrelated claims or additional Defendants into this lawsuit."  (Doc. 99, p. 4.)  Plaintiff ponders whether these instructions prohibited an amended complaint or if they were merely indicating one was not required in the situation.  The Court does not find these instructions confusing.  The instructions plainly directed Plaintiff to provide clarification of certain claims without requiring a full amended complaint.  While the instructions did require the filing of a clarifying "Supplement" and put limits on its page length and subject matter, (id.), nothing in the Magistrate Judge's Order indicates the Court intended to deprive Plaintiff of his rights to also file an Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a).  In fact, Plaintiff sought leave to file a Second Amended and Supplemental Complaint in this action, (docs. 174, 174-1), and a Third Amended Supplemental Complaint, (doc. 212), and an additional Supplemental Complaint, (doc. 219), which the Court denied for reasons unrelated to the instructions in the Magistrate Judge's December 20, 2019 Order.  (Doc. 234.)

Accordingly, Plaintiff's arguments that the Magistrate Judge's Order was confusing are unavailing, and the Court **OVERRULES** Plaintiff's Objection on this issue.  Plaintiff has not shown the Magistrate Judge's Order is clearly erroneous or contrary to law.  This ruling applies to all of Plaintiff's Objections concerning the alleged confusing nature of the Magistrate Judge's instructions, including Plaintiff's Objections regarding the instructions as they relate to his conditions of confinement claims, his First Amendment religious rights claims, and his access to courts (photocopies) claims.  (Doc. 110, pp. 15–17, 41–42.)

III.   **Plaintiff's Motion to Withdraw his Motion for Preliminary Injunction or Motion for Temporary Restraining Order regarding forceable shaving (Docs. 132, 146, 146-1)**

The Court also considers Plaintiff's Motion for "Withdrawal of Motion for Preliminary Injunction (Doc. 132) Without Prejudice." (Docs. 146, 146-1.)   In his Motion to Withdraw, Plaintiff seeks to withdraw his Motion for Preliminary Injunction or Motion for Temporary Restraining Order regarding forceable shaving, (doc. 132).[8]   The Court **GRANTS** Plaintiff's Motion to Withdraw, (docs. 146, 146-1), and **DENIES as moot** Plaintiff's Motion for Preliminary Injunction or Motion for Temporary Restraining Order, (doc. 132).

## CONCLUSION

For the above-stated reasons, the Court **SUSTAINS in part** and **OVERRULES in part** Plaintiff's Objections to the Magistrate Judge's Report and Recommendation and **OVERRULES** Plaintiff's Objections to the Magistrate Judge's Order directing Plaintiff to clarify certain claims. The Court **REJECTS** the Magistrate Judge's recommendation that the Court dismiss Plaintiff's GSP deprivation of property claims.   The Court further **REJECTS** the Magistrate Judge's recommendation of the dismissal or termination of Defendants Humphrey, Tillman, Jones, Lewis, Fields, Fountain, Rozier, James Smith, Fowler, and Major Smith from this action, as these Defendants will remain in this action, though only as to Plaintiff's GSP claims of conditions of confinement, access to courts (photocopies), and First Amendment religious exercise rights, which are still under consideration by the Court.   All other GSP claims against Defendants Humphrey, Tillman, Jones, Lewis, Fields, Fountain, Rozier, James Smith, Fowler, and Major Smith are **DISMISSED.**

---

[8]   Plaintiff has since refiled his Motion for Preliminary Injunction or Temporary Restraining Order regarding forceable shaving.   (Docs. 166, 195.)  These Motions will be considered by the Court in a separate Order.

The Court **OVERRULES** all other Objections by Plaintiff to the Magistrate Judge's Report and Recommendation and **ADOPTS** the Magistrate Judge's Report and Recommendation as the opinion of the Court as follows:

1. The Court **SEVERS** the Cobb County claims from this case, **TRANSFERS** all of Plaintiff's Cobb County claims to the District Court for the Northern District of Georgia, and **TERMINATES** the Defendants named in Plaintiff's Cobb County claims as Defendants in this case;[9] and

2. The Court **SEVERS** the GDCP claims from this case, **TRANSFERS** all of Plaintiff's GDCP claims to the District Court for the Middle District of Georgia, and **TERMINATES** the Defendants named solely in Plaintiff's GDCP claims as Defendants in this case.[10]

As to the remaining GSP claims:

1. The Court **DISMISSES** all of Plaintiff's GSP claims against Defendants Georgia Department of Corrections, Broome, Jackson, Mr. John Doe (Medical Director)

---

[9]  The Defendants named in the Cobb County claims are Defendants Head, Evans, and Staley. These Defendants should no longer be named Defendants in this action.

[10]    Plaintiff asserts GDCP claims against the GDC and the following individuals: Chatman, Bishop, McMillan, Nopen, Nash, Medlock, and Barber. No claims will remain pending in this District against these Defendants, and these Defendants should no longer be named as Defendants in this action. Any GDCP claims against them will be severed and transferred to the Middle District of Georgia. Plaintiff also asserts GDCP claims against GDC Defendants Owens, Ward, and Jacobs; however, for these three Defendants, Plaintiff also asserts GSP claims that survived frivolity review. As to Defendants Owens, Ward, and Jacobs, Plaintiff's GDCP claims against these three Defendants should be severed and transferred, the GSP claims should proceed in this Court, and these three Defendants should remain named Defendants in this action. As to GDC Defendants Humphrey, Tillman, Jones, Lewis, Fields, Fountain, Rozier, and James Smith, the GDCP claims against these Defendants should be severed and transferred. However, the GSP claims against Defendants Humphrey, Tillman, Jones, Lewis, Fields, Fountain, Rozier, and James Smith based on (1) conditions of confinement, (2) access to courts (photocopies), and (3) First Amendment religious exercise rights are still under consideration by the Court, and these Defendants should, therefore, remain named Defendants in this action.

(substituted with Roy Sabine), and Dr. John/Jane Doe (dentist) (substituted with Dr. Ray and Dr. Geiger), and **TERMINATES** these Defendants upon the docket and record of this case;

2. The Court **DISMISSES** Plaintiff's grievance procedure claims;

3. The Court **DISMISSES** all of Plaintiff's substantive due process claims;

4. The Court **DISMISSES** all of Plaintiff's claims under the RLUIPA;

5. The Court **DISMISSES** Plaintiff's retaliation claims against Defendants Jacobs, Toole, Shuemake, Todman, and Davis; and

6. The Court **DENIES** Plaintiff's preliminary injunctive relief Motions, as supplemented, docs. 8, 10, 11, 72, 73.

Consequently, the following claims against the following Defendants remain pending in this action:

1. Plaintiff's GSP claims for deliberate indifference to serious medical needs against Defendants King, Paul, Toole, Salgado, Lightsey, Sharon Brown, Strickland, Dobbs, Crowder, Caravello, McNunn, Nicolou, Silvers, Cowart, Brady, Wooten, Thurmond, Milton Smith, Owens, Ward, Jacobs, Bailey-Dean, Murphy, Shuemake, Todman, and Davis;

2. Plaintiff's GSP claims for deliberate indifference to health and safety and excessive use of force claims against Defendants Warren, Cauley, and Davis;

3. Plaintiff's GSP access to courts (postage) claims against Defendants Toole, Kilgore, Brown, and Henry;

4. Plaintiff's GSP procedural due process claims against Defendants Deloach, Owens, Toole, Bailey-Dean, and Jacobs; and

5. Plaintiff's GSP deprivation of property claims against Defendants Toole, Jacobs, Shuemake, Todman, and Davis.

As noted above, Plaintiff's GSP claims of conditions of confinement, access to courts (photocopies), and First Amendment religious exercise rights are still under consideration by the Court, and thus, the Court refrains from ruling on those claims in this Order. The Court also **GRANTS** Plaintiff's Motion to Withdraw his Motion for Preliminary Injunction or Motion for Temporary Restraining Order regarding forceable shaving, (docs. 146, 146-1), and **DENIES as moot** Plaintiff's Motion for Preliminary Injunction or Motion for Temporary Restraining Order regarding forceable shaving, (doc. 132).

**SO ORDERED**, this 4th day of September, 2020.


R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA